MORRIS SHEPPARD ARNOLD, Circuit Judge.
This case is before us for a second time. The plaintiffs are pro-life activists who sometimes express their objection to abortion by picketing near the residences of individuals who provide abortion services. In 1994, they challenged the constitutionality of a residential picketing ordinance passed by the city of Fargo, North Dakota. After the district court refused to issue a preliminary injunction enjoining enforcement of the ordinance, we took up the case on appeal and reversed, holding that a preliminary injunction was in order because the ordinance was probably unconstitutional. Kirkeby v. Furness, 52 F.3d 772, 774-76 (8th Cir.1995) (“Kirkeby I”).
On remand, the district court held that the ordinance was unconstitutional because it violated the plaintiffs’ First Amendment right of free expression. The court also held that two “Restricted Picketing Zones” established pursuant to the ordinance were unconstitutional. The court therefore granted summary judgment for the plaintiffs and enjoined enforcement of the ordinance.
This case presents two distinct issues. The first is whether the ordinance violates the First Amendment on its face. The second is whether the “Restricted Picketing Zone” that the city adopted after amending the ordinance violates the plaintiffs’ First Amendment rights. We answer both questions in the affirmative and affirm the judgment of the district court.[1]
I.
As a preliminary matter, we note that the ordinance at issue here differs slightly from the one that we considered in Kirkeby I. (Fargo amended its ordinance before our decision in that case.) Because the plaintiffs amended their complaint below to include allegations against the amendments, however, the new ordinance is properly before us on this appeal.
The ordinance, as amended, prohibits “targeted residential picketing.” Fargo Municipal Code, art. 10-0802. Targeted residential picketing is defined as picketing that identifies an occupant (either orally or in writing) within two hundred feet of a dwelling, blocking access to a dwelling, or maintaining a presence within seventy-five feet of a dwelling for longer than five minutes at a time. Fargo Municipal Code, art. 10-0801(4). The ordinance also gives the Board of City Commissioners the authority to declare, at the request of a complaining resident, the resident’s block a “Restricted Picketing Zone” in which picketing may be limited ór prohibited outright. Fargo Municipal Code, art. 10-0804.
A.
Plaintiffs first object to the definition of picketing in the ordinance. In evaluating this claim, we must determine whether the definition is content-based or content-neutral, because “the appropriate level of scrutiny is initially tied to whether the statute distinguishes between prohibited and permitted speech on the basis of content.” Frisby v. Schultz, 487 U.S. 474, 481, 108 S.Ct. 2495, 2501, 101 L.Ed.2d 420 (1988). Content-based restrictions are unconstitutional unless they are narrowly tailored to serve a compelling government interest. Perry Education Ass’n v. Perry Local Educators’ Ass’n, 460 U.S. 37, 45, 103 S.Ct. 948, 954-55, 74 L.Ed.2d 794 (1983). Content-neutral regulations, on the other hand, withstand scrutiny if they are “‘narrowly tailored to serve a significant governmental interest’ ” and if they “ ‘leave open ample alternative channels for communication.’ ” Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989), quoting Clark v. Community for Creative Non-Violence, 468 U.S. *659 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984).
The ordinance defines picketing as “standing, marching, sitting, lying, patrolling or otherwise maintaining a physical presence inside of, in front, or about any premises for the purpose of persuading the public or an occupant of such premises or to protest some action, attitude or belief.” Fargo Municipal Code, art. 10-0801(2). We agree with the plaintiffs that this definition is content-based. The picketing limitations that incorporate this limitation are not “justified without reference to the content of the regulated speech.” Clark, 468 U.S. at 293, 104 S.Ct. at 3069. It is impossible to tell whether a stander, marcher, patroller, etc., is “picketing” without analyzing whether he or she intends to convey a “persuasive” message or to “protest some action, attitude or belief.” (We note that Fargo itself has conceded as much: when asked in plaintiffs’ request for admissions whether distributing literature, soliciting donations, or otherwise disseminating information would be considered picketing, Fargo replied that it might be, “depending on the content of the communication.”)
As we have already noted, because the definition of picketing is content-based, any restriction on expression that incorporates it must be justified by a compelling government interest. Perry, 460 U.S. at 45, 103 S.Ct. at 954-55. Although the interest asserted by Fargo (protecting residential privacy and tranquility) is a “substantial” one, Frisby, 487 U.S. at 488, 108 S.Ct. at 2504, the Supreme Court has never held that it is a compelling interest, see Carey v. Brown, 447 U.S. 455, 465, 100 S.Ct. 2286, 2292-93, 65 L.Ed.2d 263 (1980), and we do not think that it is. Because the entire ordinance is bottomed on this definition, it is unconstitutional.
We hold, moreover, that even if the definition of picketing were not content-based, the restrictions incorporating it would be unconstitutional. First, as we mentioned above, content-neutral restrictions must be narrowly tailored. Frisby, 487 U.S. at 482, 108 S.Ct. at 2501. A regulation is narrowly tailored if it “targets and eliminates no more than the exact source of the ‘evil’ it seeks to remedy.” Id. at 485, 108 S.Ct. at 2503. In this case, by defining picketing as persuasive or protest activity “inside of, in front, or about any premises,” the ordinance arguably reaches a teenager pleading with her father to extend her curfew, a child protesting when ordered to eat all of his vegetables, or a husband trying to convince his wife that he really needs a new set of golf clubs. While limiting such activities might well improve domestic tranquility, Fargo is certainly without power to do so.
The definition of picketing is also unconstitutionally vague. “To survive a vagueness challenge, a statute must ‘give the person of ordinary intelligence a reasonable opportunity to know what is prohibited’ and ‘provide explicit standards for those who apply [the statute].’ ” Video Software Dealers Ass’n v. Webster, 968 F.2d 684, 689 (8th Cir.1992), quoting Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972). In this case, it is unclear to us, and we think to the ordinary person, precisely what activities are considered picketing. Fargo itself apparently shares our puzzlement. For example, Fargo claimed in response to requests of admissions that door-to-door religious proselytizing and commercial sales are not covered by the ordinance, but we think that these are activities that are clearly “persuasive” as the word is generally understood.
Finally, the ordinance fails to “ ‘establish minimal guidelines to govern law enforcement.’ ” Kolender v. Latoson, 461 U.S. 352, 358, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983), quoting Smith v. Goguen, 415 U.S. 566, 574, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974). When asked in a request for admission how the police would determine whether individuals were picketing within the meaning of the ordinance, Fargo responded, “it obviously involves some judgment on the part of the law enforcement officer who is charged with the duty of enforcing the ordinance.” Although we must necessarily give law enforcement officials some discretion to make judgments about whether someone is violating the law, they must be guided by a reasonably discernible sense of what activi *660 ties are prohibited. Here, Fargo was unable to articulate standards to guide law enforcement officers, stating instead, in response to a request for admission, that “whether a particular activity constitutes picketing must be determined in the context of all the activities of the person doing the activity.” This response illustrates that, rather than providing a guide for law enforcement, the ordinance “permitfs] ‘a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.’ ” Ko-lender, 461 U.S. at 358, 103 S.Ct. at 1858, quoting Smith, 415 U.S. at 575, 94 S.Ct. at 1248.
B.
The plaintiffs also contend that the total ban on “targeted residential picketing” is unconstitutional. We agree. This prohibition imposes a content-based restriction on expression by prohibiting “[cjarrying written material” or “[s]houting or otherwise verbalizing protests within 200 feet of a dwelling which identifies the occupant.” Fargo Municipal Code, art. 10-0801(4)(A), art. 10-0801(4)(B). These restrictions regulate speech or conduct “based on hostility-—or favoritism—towards the underlying message expressed,” R.A.V. v. City of St. Paul, 505 U.S. 377, 386, 112 S.Ct. 2538, 2545, 120 L.Ed.2d 305 (1992). Whether an individual’s expressive activity is regulated depends entirely on whether the content of his or her expression identifies a resident. See Boos v. Barry, 485 U.S. 312, 318-19, 108 S.Ct. 1157, 1162-63, 99 L.Ed.2d 333 (1988) (opinion of O’Connor, J.). Our conclusion is highlighted by the fact that the plaintiffs would be unable to convey their intended message without identifying the targeted resident. The statements “abortion is immoral” and “the woman who lives in this house is immoral because she performs abortions” are qualitatively distinct. Perhaps Fargo believes that the latter message, because of its content, is more discomforting, insulting, or embarrassing. But there is no constitutional right to be free from insult, and shielding residents from it is not a compelling government interest. See, e.g., Texas v. Johnson, 491 U.S. 397, 408-09, 414, 109 S.Ct. 2533, 2541-42, 105 L.Ed.2d 342 (1989), and Cohen v. California, 403 U.S. 15, 21, 91 S.Ct. 1780, 1786, 29 L.Ed.2d 284 (1971).
The residential picketing restrictions would be invalid even if they were not content-based, because they are not narrowly tailored. They restrict far more speech than necessary to “eliminate[ ] ... the ‘evil’ [Fargo] seeks to remedy.” Frisby, 487 U.S. at 485, 108 S.Ct. at 2503. For one thing, the ordinance restricts speech that is completely unrelated to that interest. Justice Stevens’s observation in Frisby applies with even greater force here: In Fargo, it is apparently illegal for a fifth-grader to carry a sign in front of a residence that states “GET WELL CHARLIE—OUR TEAM NEEDS YOU.” Id. at 496, 108 S.Ct. at 2509 (Stevens, J., dissenting). The ordinance also prohibits standing on the sidewalk while holding a sign that states “Vote for Joe” or “Come wish Susan a happy birthday.”
Additionally, although the Supreme Court has held that it is permissible to prohibit “focused picketing taking place solely in front of a particular residence,” Frisby, 487 U.S. at 483, 108 S.Ct. at 2502, it has also held that a three-hundred-foot buffer zone is unconstitutional. Madsen v. Women’s Health Center, — U.S. -, -, 114 S.Ct. 2516, 2529-30, 129 L.Ed.2d 593 (1994). In this case, the ordinance prohibits picketers from identifying an occupant within two hundred feet of a dwelling. Fargo Municipal Code, art. 10-0801(4)(D), art. 10-0801(4)(B). We believe that the size of the area within which speech is curtailed is too large. We recently held that a city could restrict residential picketing within a three-house zone, Douglas v. Brownell, 88 F.3d 1511, 1520-21 (8th Cir.1996), but we are quite certain that any extension beyond that zone would be unconstitutional.
C.
The plaintiffs also object to the section of the ordinance that empowers the Board of City Commissioners to establish a “Restricted Picketing Zone” at the behest of a complaining resident. Fargo Municipal Code, art. 10-0804. The ordinance prohibits *661 picketing in restricted picketing zones “except as permitted in the resolution establishing the zone.” Id. The Board may ban picketing altogether for two hundred feet on either side of the complaining resident’s lot and may impose additional restrictions on picketing for the resident’s entire block. Fargo Municipal Code, art. 10-0804(B).
We agree with the plaintiffs that this section of the ordinance is invalid. The “200-foot zone is almost certainly too restrictive of the right to speak freely in public.” Kirkeby I, 52 F.3d at 774. (In fact, the 200-foot area might, depending on the size of the lot, cover an area larger than the one struck down in Madsen, — U.S. at —, 114 S.Ct. at 2530.) Madsen and Frisby make it clear that an ordinance (like the one before us) that allows Fargo to prohibit “[g]eneral marching through residential neighborhoods, or even walking a route in front of an entire block of houses,” is unconstitutional. Madsen, — U.S. at —, 114 S.Ct. at 2530; Frisby, 487 U.S. at 483, 108 S.Ct. at 2502. Although Fargo may pass an ordinance prohibiting protesters from maintaining a constant presence outside of three residences, Douglas, 88 F.3d at 1520-21, we think it manifest that it cannot give the Board the authority to create a “First-Amendment-free zone” that is larger than two football fields.
The fact that the Board must make legislative “findings,” Fargo Municipal Code, art. 10-0804(A), about the nature and extent of previous picketing before establishing a zone does not change our analysis. Fargo’s protestations to the contrary, the government may not legislate away the First Amendment. Furthermore, although Fargo assures us that the Board will establish a zone only if picketing interferes with residential privacy and tranquility, the statute includes no such requirement. The ordinance directs the Board to “investigate any request from a resident of [Fargo] that intrusive or repeated picketing is occurring,” and states that “[u]pon review, the Board ... may adopt a resolution establishing a Restricted Picketing Zone.” Id. The ordinance does not require the Board to base its decision about whether to establish a zone upon any particular findings, nor does it require that the zone be narrowly tailored to address specifically identified difficulties.
Finally, the ordinance gives the Board the power to impose additional picketing restrictions on an entire residential block. Fargo Municipal Code, art. 10-0804(B). The ordinance does not specify what other restrictions are permissible, and we are concerned that permitting the Board to restrict speech on a block-wide basis will lead to many unconstitutional restrictions on free expression. (Indeed, as our discussion of the remaining restricted picketing zone, below, demonstrates, it already has.)
II.
We turn now to whether the restricted picketing zone, adopted by the city following amendment of the ordinance, is itself unconstitutional. The Board had established two other restricted picketing zones under the old version of the ordinance, but it admits that they do not comport with the amended version. Although the zone we now consider expired in early July, 1996, we believe that the dispute about its constitutionality is not moot. The restrictions imposed by the Board are “capable of repetition, yet evading review” because there is “a reasonable expectation that the [plaintiffs] will be subjected to the same action again.” Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (citations and quotation marks omitted). The resolution establishing the zone restricts picketing in several ways. First, it bans picketing altogether, on the resident’s side of the street, in front of and for one hundred fifty feet on either side of her lot. For reasons that we have already made amply clear, this part of the resolution is unconstitutional. The “speech-free” zone is simply too large. Madsen, — U.S. at —, 114 S.Ct. at 2530.
The resolution also imposes several block-wide picketing limitations. It limits the duration of picketing to one hour per day and restricts the hours within which picketing may occur. (Picketing is permitted Monday through Friday, between the hours of 9 a.m. and noon, 1 p.m. to 4 p.m., and 7 p.m. to 8 p.m.; it is prohibited all weekend.) The *662 resolution also provides that no more than five individuals may picket at any one time. In evaluating the constitutionality of these restrictions, we turn again to the standard articulated in Ward, 491 U.S. at 791, 109 S.Ct. at 2753-54: Content-neutral time, place, and manner restrictions are valid if “they are narrowly tailored” and “leave open ample alternative channels for communication of the information.” Although the Supreme Court has indicated that residential picketing difficulties are often best addressed by “a limitation on the time, duration of picketing, and number of pickets,” Madsen, — U.S. at —, 114 S.Ct. at 2530, we believe that, with the exception of the weekday time-of-day limitations, all of the limitations in the resolution are too restrictive of the plaintiffs’ right to speak.
We turn first to the hour-per-day picketing limitation and the total ban on weekend picketing. Although Fargo may set some time limits on picketing (for example, the weekday hour restrictions imposed here seem reasonable), we cannot accept Fargo’s argument that imposing such extreme restrictions upon the right to speak is the most narrowly tailored way to protect residential privacy and tranquility. We seriously doubt that residential privacy will be dramatically undermined by permitting picketing on the public streets for more than five hours per week.
Furthermore, the regulations do not leave open “ample alternative channels for communication of the information” that the plaintiffs wish to convey. Ward, 491 U.S. at 791, 109 S.Ct. at 2753 (emphasis supplied). As we emphasized in our discussion of the portion of the ordinance that prohibits identifying the target of the picketer, plaintiffs wish to express an opinion about an individual to that individual and others, and they wish to direct their message at that individual. That is precisely why they picket around the individual’s, home: they wish to speak to her and they wish to identify her to others. Therefore, allowing them to picket in the town square or even on the next block does not satisfy the second Ward requirement. These time limits do not give the plaintiffs enough opportunity to direct their intended message at their intended recipients.
Finally, we believe that it is also unconstitutional to limit the total number of pickets per residential block to five. This restriction is similar to one that we invalidated in United Food & Commercial Workers Int’l Union v. IBP, Inc., 857 F.2d 422, 432 (8th Cir.1988), that prohibited “more than two pickets at any one time within ... fifty feet of any entrance to the premises being picketed,” id. In this case, because they apply to an entire block, the restrictions impose even broader restrictions on free expression, and, as in United Food, we cannot say that these restrictions represent the most narrowly tailored way to protect Fargo’s stated interest. In fact, taken together, the duration and number restrictions may well lead to a situation where most residents are unaware that anyone is picketing at all.
III.
In closing, we emphasize that “[t]he anti-picketing ordinance operates at the core of the First Amendment,” Frisby, 487 U.S. at 479, 108 S.Ct. at 2499, because it restricts free expression on the public streets, “the archetype of a traditional public forum,” id. at 480, 108 S.Ct. at 2500. “Because of the importance of ‘uninhibited, robust, and wide-open’ debate on public issues,” id. at 479, 108 S.Ct. at 2499, quoting New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964), the government must be extremely solicitous of the plaintiffs’ desire to express themselves and must carefully, narrowly, and meticulously craft any restriction on that desire. In this case, the city of Fargo has been neither solicitous nor careful.
For the foregoing reasons, we affirm the judgment of the district court.

. The Honorable Rodney S. Webb, Chief United States District Judge for the District of North Dakota.